UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HELLYN RIGGINS,                          :
                                         :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :   Case No. 3:18-cv-1734(RNC)
                                         :
TOWN OF BERLIN,                          :
                                         :
        Defendant.                       :

RULING AND ORDER

Plaintiff Hellyn Riggins, former Director of Development
and Town Planner for the Town of Berlin, brings this action
against the Town under Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e, et seq., as amended by the
Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Connecticut
Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 42a-
60, et seq.  Riggins alleges that she was sexually harassed by
Thomas Coccomo, the owner of a local construction company,
giving rise to a hostile work environment that the Town failed
to rectify.  The Town has moved for summary judgment.  The
motion is granted because, viewing the record as a whole and in
a manner most favorable to plaintiff, the Town took appropriate
remedial action to protect her against further harassment.

I.

The following facts drawn from the parties' submissions,
viewed most favorably to plaintiff, are accepted as true for

purposes of this ruling.  At all pertinent times, Coccomo was a developer who conducted operations in Berlin.  In his capacity as a local developer, he frequently interacted with Riggins and her colleagues at the Town Hall.  However, his relationship with Riggins began when his construction company built her home in Berlin.  She was dissatisfied with aspects of the construction and contacted the Better Business Bureau for a resolution.  Her home was subsequently damaged in incidents she suspected were intentionally caused by Coccomo.

After these incidents, Coccomo engaged in harassing behavior toward Riggins on multiple occasions spanning many years as follows:

In 2003, an unidentified individual submitted anonymous comment cards to the Town stating that Riggins was "unprofessional and unwelcoming" and "dressed like a waitress." ECF No. 39-2 ¶ 9.  Riggins has reason to believe the cards were submitted by Coccomo.

In 2006, Coccomo called Riggins "a fucking loser" in her office at the Town Hall.  Id. ¶ 10.  He also accused her of being a racist in an email and through a memo written on a check.

In 2013, Coccomo sent two communications to Town officials accusing Riggins of engaging in sexual activity with a

subordinate, Bruce Driska, at the Town Hall.[1]

In 2017, Coccomo again sent two messages to Town officials accusing Riggins of sexual activity with subordinates and emailed Riggins and one of her subordinates, Frank Van Linter, accusing them of being in a sexual relationship.  Riggins suspects that Coccomo circulated additional rumors about her sexual activity but has no direct knowledge of Coccomo making those statements.

In September 2017, Riggins accepted a job as a town manager in Tennessee and subsequently resigned from her position in Berlin.

The Town did not start an official sexual harassment investigation until after Riggins resigned.  It is undisputed, however, that Town officials did take the following action in response to Coccomo's behavior.

In 2013, the Town made a police officer available to Riggins whenever she met with Coccomo.  The police department also assigned a detective to investigate various communications from Coccomo.  At least three town officials told Coccomo his behavior was inappropriate.

In addition, the Town attorney advised Coccomo's attorney that Coccomo's behavior was unacceptable.  The Town attorney

---

[1] One of the communications is confirmed to have come from Coccomo, id. ¶ 18, while the other was anonymous but presumably authored by him, id. ¶ 14.

also reviewed police reports and communications involving
Coccomo and developed a protocol for Riggins and other victims
of Coccomo to follow.

The Town also sought advice about bringing criminal charges
against Coccomo.  Interim Town Manager Jack Healy conferred with
Town attorneys and the police each time he became aware of an
inappropriate communication from Coccomo.  He was advised that
the Town "couldn't do anything" and that criminal charges could
not be brought.  ECF No. 45 ¶ A-59-60.  Healy also conferred
with an Assistant State's Attorney to determine whether criminal
charges could be brought against Coccomo.  The Assistant State's
Attorney determined that nothing could be done.

II.

Summary judgment may be granted when there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986).  To avoid summary judgment, plaintiff must
point to evidence that would permit a jury to return a verdict
in her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
252 (1986).  In determining whether there is a genuine issue of
material fact, the record must be viewed in a manner most
favorable to plaintiff.  Id. at 255.  But conclusory
allegations, conjecture, and speculation are insufficient to
create a genuine dispute of material fact.  Shannon v. New York

4

City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

In support of the motion for summary judgment, the Town argues principally that Riggins cannot impute liability to the Town for Coccomo's harassment because it acted appropriately in response to his behavior.  I conclude that there is no genuine issue of material fact as to the Town's remedial actions and that those actions entitle the Town to judgment as a matter of law.  As a result, I do not reach other arguments presented by the Town in support of the motion.

To prevail on her hostile work environment claim, Riggins must establish: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 436 (2d Cir. 1999) (internal citation omitted).  Viewing the record in a manner most favorable to Riggins, and giving her the benefit of all permissible inferences, I assume without deciding that she can meet her burden with regard to the first prong, but conclude that she cannot meet her burden with regard to the second one.

The Second Circuit applies the "rules of the Equal Employment Opportunity Commission in imputing employer liability

for harassment by non-employees according to the same standards for non-supervisory co-workers." Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013).  The Second Circuit also instructs district courts to consider "the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees." Id. (citing 29 C.F.R. § 1604.11(e)).

Applying the standards for non-supervisory co-workers, the Town can be "held liable only for its own negligence" and Riggins must demonstrate that it "failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."  Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009) (internal citations omitted). It is undisputed that the Town knew about the harassment, so the question is whether it failed to take appropriate remedial action.  The question is not "whether [the Town's] response was the best course of action possible, but rather whether it was appropriate in light of all the circumstances."  Crist v. Focus Homes, Inc., 122 F.3d 1107, 1112 n.5 (8th Cir. 1997).

Plaintiff's claim requires consideration of what constitutes appropriate remedial action by a government employer when an employee is harassed by a non-employee constituent

entitled to access government services.  This appears to be an issue of first impression.

Private employers have been held responsible for harassment of employees perpetrated by customers or independent contractors.  See, e.g., Swiderski v. Urban Outfitters, Inc., No. 14-cv-6307 (JPO), 2015 WL 3513088, *4 (S.D.N.Y. June 4, 2015) (finding that one could conclude the store "failed reasonably to prevent [a serial sexual harasser] from being a problem again"); Sparks v. Reg'l Med. Ctr. Bd., 792 F. Supp. 735, 738 (N.D. Ala. 1992) (discussing the responsibilities of an employer whose independent contractor was harassing employee). See also ECF No. 44 at 22 (collecting cases).  These cases are easily distinguished from this one because any attempt by the Town to ban Coccomo from accessing the services provided by Riggins and her staff based on his statements could expose it to a threat of legal liability to him.[2]

Somewhat more analogous are cases involving claims by employees of healthcare providers and correctional facilities that have a similar obligation to provide access to services. Whether liability for third-party harassment may be imputed to

---

[2] See, e.g., Bach v. Sch. Bd. of Virginia Beach, 139 F. Supp. 2d 738, 744 (E.D. Va. 2001) (striking down prohibition on "personal attacks" by constituents at public meetings); Leventhal v. Vista Unified Sch. Dist., 973 F. Supp. 951, 962 (S.D. Cal. 1997) (striking down prohibition on criticism of school employees at public meetings); Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996) (enjoining prohibition on criticism of school employees at public meetings).

the employer in these settings depends on the degree of control the employer has over the harasser.  See Crist, 122 F.3d at 1112 (nursing home controlled environment in which harassing patient resided); Hicks v. Alabama, 45 F. Supp. 2d 921, 933 (S.D. Ala. 1998) (prison not responsible for behavior of prisoners toward female guards when court and plaintiff were "unable to identify any measure which could have been employed to curtail the inmate's conduct").

Even when an employer has more power over harassers than the Town had over Coccomo, appropriate remedial action in response to harassment will prevent a jury from imputing liability to the employer.  See Summa v. Hofstra Univ., 708 F.3d 115 (2d Cir. 2013) (harassment by football players of student manager could not be imputed to University, even given its degree of control over students, because coach took prompt action in response to each incident); Zupan v. State, No. 95 C 1302, 1999 WL 281344 (N.D. Ill. Mar. 31, 1999) (given degree of control exercised by State of Illinois over harassing deputy county sheriff, State's actions in response to harassment were timely and reasonable).  See also Jarman v. City of Northlake, 950 F. Supp. 1375, 1380 (N.D. Ill. 1997) (city had sufficient control over harassing non-employee alderman to require intervention and interventions were not sufficiently immediate).

As all these cases demonstrate, whether an employer
satisfied its duty to respond appropriately to third-party
harassment is highly contextual, requiring analysis of what
degree of control the employer exercised over the third party
and what else the employer could have done in the circumstances.
Consistent with these cases, a hostile work environment claim
can survive if the employer failed to take concrete steps that
could have prevented harassment.  See, e.g., Jarman, 950 F.
Supp. at 1382; Turnbull v. Topeka State Hosp., 255 F.3d 1238,
1245 (10th Cir. 2001) (finding that a hospital could have
provided but failed to provide additional safety measures for
the protection of staff against sexual harassment from
patients).  But if the plaintiff is unable to identify steps the
employer could have taken to prevent the harassment, summary
judgment may be granted.  See, e.g., Hicks, 45 F. Supp. at 933;
Zupan, 1999 WL 281344 at *10.

In the present case, the Town had limited control over
Coccomo's behavior as a constituent non-employee.  The Town was
obligated to give him access to services provided to other local
developers, as evidenced by emails concerning his applications
for local revitalization project grants.  See, e.g., ECF No. 39-
2 ¶ 35.  In her position as Director of Development and Town
Planner, Riggins was responsible for the provision of services

9

to developers, so the Town could not ban Coccomo from
interacting with her.

Unable to impose such a ban, the Town took other steps.  As
discussed above, it offered police protection for Riggins during
meetings with Coccomo; communicated to Coccomo and his attorney
that his behavior was unacceptable; assigned a detective to
investigate communications from Coccomo on multiple occasions;
and sought advice from Town attorneys, the Assistant State's
Attorney, and police about the possibility of bringing criminal
charges multiple times.

Riggins argues that "[a] jury could easily find that the
defendant took no reasonable steps to proactively address the
sexual harassment of the plaintiff."  ECF No. 44 at 23 (emphasis
added).  However, she does not dispute that the Town took the
actions just listed, and she identifies no other action the Town
could have taken to prevent the harassment.  She criticizes the
Town for failing to start an internal investigation earlier.
But the Town manager and other officials pressed law enforcement
officials for help only to be informed repeatedly that nothing
could be done.

On the present record, viewed fully and most favorably to
plaintiff, a jury could not reasonably find that the Town failed
to take concrete action that could have prevented Coccomo's
harassment.

III.

Accordingly, the motion for summary judgment is hereby granted.

So ordered this 30th day of April 2023.

_____
/s/ RNC
Robert N. Chatigny
United States District Judge