MANDATE

23-868-cv
*Riggins v. Town of Berlin*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of June, two thousand twenty-four.

PRESENT:     PIERRE N. LEVAL,
             SARAH A. L. MERRIAM,
             MARIA ARAÚJO KAHN,
                  *Circuit Judges.*

_____

HELLYN RIGGINS,

     *Plaintiff-Appellant*,

        v.                                                    No. 23-868-cv

TOWN OF BERLIN,

     *Defendant-Appellee*.

_____

FOR PLAINTIFF-APPELLANT:     GREGG D. ADLER (Mary E. Kelly, *on the brief*),
                             Livingston, Adler, Pulda, Meiklejohn & Kelly,
                             P.C., Hartford, CT.

MANDATE ISSUED ON 07/11/2024

FOR DEFENDANT-APPELLEE:     ALEXANDRIA L. VOCCIO, Maccini Voccio & Jordan, LLC, Middletown, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, *J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court is **VACATED** and this matter is **REMANDED** for further proceedings consistent with this Order.

Plaintiff-appellant Hellyn Riggins ("Riggins"), who served for over fourteen years as Town Planner and Director of Development Services for the Town of Berlin, Connecticut (the "Town"), appeals from the May 2, 2023, judgment of the District Court granting summary judgment to defendant-appellee the Town. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Riggins brought this action against the Town pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60(a)(8), *et seq.*, alleging generally that the Town had discriminated against her based on sex by failing to take appropriate action to protect her against lewd and defamatory harassment by Town resident and local building contractor Thomas Coccomo ("Coccomo"). Riggins alleged that the Town had a duty to protect her from the hostile work environment caused by Coccomo's harassment.

2

In May 2013, Coccomo sent an anonymous letter to the Town Manager, Mayor, and media outlets complaining that Riggins should have been removed from her position with the Town, because, he alleged, Riggins had "some sort of substance abuse" problem and "was involved in a sex scandal" with a subordinate.[1] J. App'x at 122.The Town concluded that Coccomo was the author, and consulted a detective in its police department as to whether the sending of the letter constituted a prosecutable crime. The detective determined that it did not violate any criminal statutes. The Town then told Riggins that she could have a police officer present when meeting with Coccomo in the future. In September 2013, Coccomo sent an email to the Town's Mayor repeating his complaint that Riggins had not been terminated for engaging in sexual activity with a subordinate while on Town property.[2]

On January 20, 2017, Coccomo sent an email to Frank Van Linter ("Van Linter"), who was a Town building official and one of Riggins' subordinates, copying Riggins. In that email, Coccomo complained that a request he made to the Town had been wrongly denied by Van Linter on the basis that Coccomo owed delinquent taxes. Coccomo's email stated: "I understand you['re] getting the Bruce Driska treatment," referring to the allegations in his 2013 communications, and implying that Riggins had engaged in inappropriate sexual activity with Van Linter to persuade him to deny Coccomo's request.

---

[1] Although this letter was not signed, the record supports an inference that Coccomo authored and sent this letter.

[2] Notably, Coccomo did not claim to be a "whistleblower" regarding the alleged relationship; rather, he appeared to believe that the addressees of the letter were well aware of it.

J. App'x at 399. In response to that email, Town attorney Jennifer Coppola, who had no experience in the area of employment law, contacted the Town police department and a detective was assigned to investigate the matter. Attorney Coppola also forwarded the email to Coccomo's then-attorney, "advising him that Coccomo needed to stop with the inappropriate communications."[3] J. App'x at 212.

On February 7, 2017, Coccomo sent an email to Town Council members complaining that Town officials were "creating hurdles rather than working with us." Id. at 406. The email threatened "to go to the press" and to "make a complete spectacle of our town" by telling the press "what Bruce [D]riska told me, how the town planner [Riggins] told him if he busted my ass she would" engage in sexual conduct with him. Id. Again, the communication used lewd and harassing language. Attorney Coppola thereafter spoke to Coccomo's new attorney "and advised him that his client was inappropriate in his communications with Town employees, and that it needed to stop." Id. at 213. She did not expressly mention sexual harassment in that conversation. Attorney Coppola and Interim Town Manager Jack Healy ("Healy") consulted with the Chief of Police and an Assistant State's Attorney to determine whether criminal charges could be brought against Coccomo. Healy also conferred with the Town's attorney each

---

[3] In addition to the sexually harassing communications directed at Riggins, Coccomo engaged in other acts of disrespectful and inappropriate conduct toward Riggins and other Town employees. Because of this pattern of misconduct, on January 5, 2017, *before* the 2017 communications to and about Riggins were sent, Attorney Coppola met with Coccomo and his then-attorney and "advised them that it was unacceptable for them to blame, harass, or attack Town employees." J. App'x at 212. At the time of that meeting, Attorney Coppola was unaware of Coccomo's history of *sexually* harassing behavior.

time he learned of an inappropriate communication, but Attorney Coppola told him there was nothing else the Town could do.

On September 9, 2017, Coccomo sent an email to John Mascia ("Mascia"), the Town's assistant building official, which again insinuated, in lewd and offensive language, that Riggins was engaging in sexual acts with Van Linter, her subordinate. Mascia forwarded this email to Van Linter, who in turn forwarded it to Riggins. Coccomo's written communications throughout were replete with aggressive, lewd, demeaning, and sexually discriminatory language.[4]

Healy and Attorney Coppola discussed the situation. Attorney Coppola advised Healy "there wasn't anything [the Town] could do." J. App'x at 254-55. In an email to Healy, Attorney Coppola recommended that the town "just ignore the guy unless he starts threatening." *Id.* at 414. On September 11, 2017, Healy met with Riggins and informed her that there was nothing the Town could do about the September 9, 2017, email. Riggins submitted her resignation on September 15, 2017. After Riggins submitted her resignation, Healy contacted the Town's employment attorney for advice. Shortly thereafter, the Town decided, for the first time, to conduct a sexual harassment investigation into Coccomo's actions.

On November 14, 2019, the Town moved for summary judgment on several grounds, including that Riggins had failed to establish a basis for imputing liability to the Town for Coccomo's sexual harassment. On April 30, 2023, the District Court granted the

---

[4] We have elected to not repeat Coccomo's harassing language verbatim to avoid further victimizing Riggins through continued dissemination of his vile attacks.

Town's motion, finding that there was no basis to impute liability to the Town because "viewing the record as a whole and in a manner most favorable to plaintiff, the Town took appropriate remedial action to protect her against further harassment." *Riggins v. Town of Berlin*, No. 3:18CV01734(RNC), 2023 WL 3173768, at *1 (D. Conn. Apr. 30, 2023). The District Court did not address the other arguments advanced by the Town in support of its summary judgment motion. *See id.* at *2. On appeal, Riggins contends that the District Court erred in concluding that "a jury could not reasonably find that the Town failed to take concrete action that could have prevented Coccomo's harassment." *Id.* at *4. For the reasons stated below, we agree with Riggins.

"We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). "We will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 56(a).

"[T]o prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)

(citation and quotation marks omitted).[5] We have adopted the "rules of the Equal Employment Opportunity Commission ('EEOC') in imputing employer liability for harassment by non-employees," which provide that "the employer will be held liable only for its own negligence." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (citation and quotation marks omitted). To demonstrate an employer's negligence, "the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id.* (citation and quotation marks omitted).[6]

There is no dispute that the Town provided a reasonable avenue for complaint and that the Town was aware of the harassment. Accordingly, the question before us is whether there is an issue of triable fact as to whether the Town's actions in response to Coccomo's harassment were appropriate. In making that determination, we look to whether the Town's "response was immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility" the Town had over Coccomo's behavior. *Id.* (citation and quotation marks omitted).

We disagree with the District Court's conclusion that "a jury could not reasonably

---

[5] Hostile work environment claims brought under Title VII and CFEPA are governed by the same standard. *See Brittell v. Dep't of Corr.*, 717 A.2d 1254, 1264-66 (Conn. 1998).

[6] We assume, without deciding, that the standard articulated in *Summa* applies to the circumstances of this case. *See, e.g.*, *Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 69 (1st Cir. 2019) (concluding that "the reasonableness rule consistently applied in third-party harassment claims is adequate to account for the complexities" of a workplace set in a correctional institution).

find that the Town failed to take concrete action that could have prevented Coccomo's harassment." *Riggins*, 2023 WL 3173768, at *4. Although there is no dispute that the Town took *some* action in response to Coccomo's conduct, upon *de novo* review, we find that there is evidence in the record from which a reasonable jury could conclude that those actions were not sufficient in light of the circumstances.

For example, although the Town brought Riggins' complaints to the police, those efforts focused on whether Coccomo could be criminally prosecuted, rather than on preventing further sexual harassment of Riggins. *See Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 149 (2d Cir. 2014) ("[T]he primary purpose of Title VII is not to provide redress but to avoid harm." (citation and quotation marks omitted)). During the period of Riggins' employment, the Town failed to investigate whether there were steps, other than criminal prosecution, the Town could reasonably take that might dissuade Coccomo from further sexually harassing communications. The Town also failed to investigate whether Coccomo's communications violated the Town's obligations under Title VII or CFEPA until *after* Riggins resigned. This failure alone creates a triable issue of fact as to whether the Town's response was appropriate. *See Malik v. Carrier Corp.*, 202 F.3d 97, 105 (2d Cir. 2000) ("[A]n employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer.").

Additionally, neither Attorney Coppola nor any other Town official told Coccomo *directly* that his accusations against Riggins were inappropriate sexual harassment and that he must stop. When Attorney Coppola first met with Coccomo and his attorney to

discuss Coccomo's inappropriate behavior towards Town employees, Attorney Coppola was unaware of Coccomo's sexual harassment of Riggins. The Town also failed to consult an *employment* attorney about the problem until after Riggins submitted her resignation, that is, after Riggins endured more than four years of Coccomo's harassment. Moreover, having been confronted with allegations that Riggins had engaged in inappropriate conduct, the Town could have investigated those allegations so that it could put an end to any actual misconduct by Riggins or determine that Coccomo's accusations were false and put an end to his harassment. The record contains no evidence of any such investigation during Riggins' tenure with the Town.

The Town asserts that liability for Coccomo's actions cannot be imputed to it because it "did not have a high degree of control, let alone any control over Coccomo's" actions. Appellee's Br. at 28. But the Town *did* have exclusive control over its workplace and over the email system to which Coccomo sent many of the harassing communications. And the Town presumably could dictate the way in which Coccomo was permitted to communicate with Town employees. *See, e.g.*, *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) ("The focus is not on the conduct itself but on the employer's behavior in response; a hospital cannot control every act of its patients, but it does control the environment at large."). Thus, the Town's degree of control over Coccomo's actions is not dispositive of whether the Town's remedial actions were sufficient and appropriate.

Furthermore, although the Town may not have had the ability to control all of Coccomo's behavior, it does not follow that the Town lacked any ability to attempt to

9

dissuade Coccomo from continuing his abusive conduct. Indeed, it does not appear that the Town made any effort to determine what its options were, other than inquiring whether criminal charges could be brought against Coccomo. At no point during Riggins' tenure did the Town direct its employment counsel to assess its options, nor did it consider civil litigation or other action against Coccomo.

Viewing the record in the light most favorable to Riggins, a reasonable jury could conclude that the Town's responses to her complaints were not appropriate. Summary judgment was therefore not warranted.

We have considered the Town's remaining arguments on appeal and find them to be without merit. Accordingly, we **VACATE** the judgment of the District Court and **REMAND** for proceedings consistent with this Order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10